UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

RONALD ROBBINS et al.,

                Plaintiffs,

             v.

NEW YORK CORN & SOYBEAN
GROWERS ASSOCIATION, INC.,

                Defendant.

7:15-cv-973
(GLS/ATB)

_____

**APPEARANCES:**

**FOR THE PLAINTIFFS:**
Cullenberg, Tensen Law Firm
199 Heater Road, Suite
Lebanon, NH 03766

**FOR THE DEFENDANT:**
Ferrara Fiorenza P.C.
5010 Campuswood Drive
East Syracuse, NY 13057

**OF COUNSEL:**

AREND R. TENSEN, ESQ.

KATHERINE E. GAVETT, ESQ.

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiffs Ronald Robbins and James Czub commenced this action against defendant New York Corn & Soybean Growers Association, Inc. (NYCSGA) seeking declaratory and injunctive relief for violations of the

Freedom of Information Act[1] and the Soybean Promotion, Research, and Consumer Information Act.[2] (Compl., Dkt. No. 1.) Pending is NYCSGA's motion to dismiss for lack of subject matter jurisdiction. (Dkt. No. 7.) For the reasons that follow, the motion is granted.

## II. Background

### A. Facts

The Soybean Promotion, Research, and Consumer Information Act (hereinafter "Soybean Act") promotes domestic soybean production and research financed from assessments charged on a per unit basis of soybeans sold to a first purchaser. *See* 7 U.S.C. §§ 6301, 6304(*l*). This Act also established a United Soybean Board (USB), which decides how the assessments will be invested. *See id.* § 6304(b)-(f). The assessments are collected by a Qualified State Soybean Board, which the Act defines as "a [s]tate soybean promotion entity that is authorized by [s]tate law." *Id.* § 6302(14). Assessments are collected by QSSBs in which they retain one-half and then remit the remainder to USB. *See id.* § 6304(*l*)(1)(A)-(B), (m).

---

[1] 5 U.S.C. § 552.

[2] 7 U.S.C. §§ 6301-6311.

2

NYCSGA is a not-for-profit corporation established under New York law to promote the interests of state corn and soybean farmers through marketing and research. (Dkt. No. 7, Attachs. 4, 5.) NYCSGA is also a QSSB under the Soybean Act, which administers funds for the assessment program. (Dkt. No. 7, Attach. 2 ¶ 4.) NYCSGA remits the assessments to USB and is subject to annual audits to demonstrate compliance with the Soybean Act's research and promotion goals. (*Id.* ¶ 7.) Robbins and Czub are both corn and soybean farmers who are members of NYCSGA and pay assessments. (Compl. ¶¶ 1-2.)

USB does not conduct or oversee the daily operations of NYCSGA. (Dkt. No. 7, Attach. 2 ¶ 10.) NYCSGA makes its own personnel, real estate, collection, and investment decisions, none of which require USB approval. (*Id.* ¶ 11.) USB's supervisory role is limited to annual audits of assessments received by NYCSGA. (*Id.* ¶ 10.)

Robbins served as the Vice President of the board of NYCSGA until December 2014 when he resigned because of alleged conflicts of interests. (Compl. ¶ 19.) Julia Robbins, Robbins's daughter, served as the Executive Director of NYCSGA. (*Id.* ¶ 20.) At some point, NYCSGA apparently disagreed with USB about the allocation of assessments. (*Id.*

¶ 21.) After the disagreement, USB raised concerns about an apparent conflict of interest as Robbins and his daughter served as Vice President and Executive Director at the same time. (*Id.* ¶¶ 21-22.) In February 2015, the board held a special meeting at which they voted to terminate J. Robbins, and she was informed of her termination later that month. (*Id.* ¶¶ 23-25.) It is alleged that the procedure used to organize the special meeting and to vote to terminate J. Robbins violated NYCSGA's bylaws. (*Id.*)

On March 13, 2015, Robbins and Czub sent a Freedom of Information Act (FOIA) request to NYCSGA seeking emails, correspondence, board meeting minutes, and notices sent to its board members around the time of J. Robbins's termination. (Compl. ¶ 30.) NYCSGA denied the request stating that it did not have to comply with FOIA. (*Id.* ¶¶ 26, 28.) Robbins and Czub allege that NYCSGA is subject to FOIA because it receives assessments from the federal program. (*Id.* ¶¶ 27, 33.)

**B.    Procedural History**

On August 10, 2015, Robbins and Czub commenced this action seeking declaratory and injunctive relief under FOIA and the Soybean Act.

4

(Compl.) They allege that the court has federal question jurisdiction on the basis of mandamus,[3] the Soybean Act, FOIA, and the Administrative Procedure Act.[4] (*Id.* ¶ 4.) Thereafter, NYCSGA filed the pending pre-answer motion to dismiss for lack of subject matter jurisdiction. (Dkt. No. 7.)

### III. Standards of Review

**A.    Rule 12(b)(1)**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "In resolving a motion to dismiss for lack of subject matter jurisdiction . . . a district court . . . may refer to evidence outside the pleadings." *Id.* "[W]hen the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998).

---

[3]  28 U.S.C. § 1361.

[4]  5 U.S.C. § 702.

When jurisdiction is based on a federal question, raising a federal issue alone will not confer jurisdiction. *See Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 137 (2d Cir. 2002). Rather, the federal issue must be substantial. *See id.* When jurisdiction is premised on claims that are "so patently without merit," the court will dismiss "for want of jurisdiction." *Id.* (internal quotation marks and citation omitted). A federal claim that fails to meet this low bar must be "'essentially fictitious,' 'wholly insubstantial,' 'obviously frivolous,' and 'obviously without merit.'" *Gallego v. Northland Grp. Inc.*, 814 F.3d 123, 126 (2d Cir. 2016) (quoting *Shapiro v. McManus*, 136 S.Ct. 450, 455 (2015)).

**B.** **Rule 12(b)(6)**[5]

The standard of review under Fed. R. Civ. P. 12(b)(6) is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its prior opinion in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010), *abrogated on other grounds by Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191 (2d Cir. 2015).

---

[5] As discussed below, the court will analyze a portion of NYCSGA's motion under the Rule 12(b)(6) standard of review.

## IV. **Discussion**

NYCSGA argues that the statutes upon which Robbins and Czub rely fail to establish subject matter jurisdiction which arises under federal law. (Dkt. No. 7, Attach. 1 at 1-11.) To this end, NYCSGA contends that it is simply not a federal agency subject to either FOIA's disclosure requirements or the court's mandamus power. (*Id.* at 3-6, 8-9.) Moreover, NYCSGA maintains that it has not violated the Soybean Act and that the APA is not an independent basis of federal court jurisdiction. (*Id.* at 7-8, 9-11.)

Robbins and Czub assert that NYCSGA is a federal agency because it has power under the Soybean Act as a QSSB to collect assessments. (Dkt. No. 9, Attach. 1 at 9-10.) They argue that this statutory power distinguishes NYCSGA from entities found not to be federal agencies. (*Id.* at 16.)

As an initial matter, the court notes that the determination of whether NYCSGA is an agency under FOIA is not a jurisdictional question. *See Main St. Legal Servs., Inc. v. Nat'l Sec. Council*, 811 F.3d 542, 566-67 (2d Cir. 2016). Rather, the Second Circuit has held that the reference to jurisdiction under FOIA implicates the court's "remedial power" and not "the

7

court's ability to adjudicate a claim, but only to the remedies that the court may award." *Id.* at 566 (citing 5 U.S.C. § 552(a)(4)(B)). As such, the Second Circuit has found that courts should evaluate whether an agency is subject to FOIA on the merits and not on a motion to dismiss for lack of subject matter jurisdiction. *Id.* at 567. Consequently, NYCSGA sought dismissal under Rule 12(b)(1) in error.

However, the court may construe NYCSGA's filing as a Rule 12(b)(6) motion for failure to state a claim provided Robbins and Czub had an opportunity to brief the issue of whether they had stated a claim under FOIA. *See Basile v. Levittown United Teachers,* 17 F. Supp. 3d 195, 206 (E.D.N.Y. 2014) (acknowledging the court's power to convert an improperly pled Rule 12(b)(1) motion but declining to do so); *Fraternal Order of Police, Nat'l Labor Council, USPS No. 2 v. U.S. Postal Service*, 988 F. Supp. 701, 704 n.2 (S.D.N.Y. 1997) (converting a 12(b)(1) motion to a 12(b)(6) motion because plaintiffs had briefed whether they had stated a claim for relief). Because Robbins and Czub fully address whether NYCSGA is an agency under FOIA, (Dkt. No. 9, Attach. 1 at 12-13, 15-16), the court finds that it is appropriate to construe NYCSGA's motion as having been made under 12(b)(6) insofar as it relates to FOIA.

8

This case turns on whether NYCSGA is an agency subject to the requirements of any of the statutes upon which plaintiffs rely for jurisdiction. The threshold issue in each claim is largely the same, however, they are evaluated under different frameworks depending on the statute and associated standard of review. Accordingly, the court will address each claim in turn.

A. **Rule 12(b)(1): Administrative Procedure Act & Mandamus Act**

NYCSGA submits that the APA is not an independent basis for federal question jurisdiction. (Dkt. No. 7, Attach. 1 at 9-11.) To that end, NYCSGA intimates that it is not an agency under the APA's definition. (*Id.*) Robbins and Czub make no argument in response.

An "agency" under the APA is an "authority of the [g]overnment of the United States" subject to certain statutory exclusions which do not apply here. 5 U.S.C. § 702(b)(1). The Second Circuit has held that this definition should not be read expansively. *See New York v. Atl. States Marine Fisheries Comm'n*, 609 F.3d 524, 532 (2d Cir. 2010).

In *Atlantic States*, the court found that an interstate fisheries compact entity was not an agency under the APA by analyzing the entity's structure, function, and mandate. *See id.* at 531-33. Specifically, it noted that the

9

entity's authority "is not federal in nature" because the member states gave no indication that they intended to convert the state cooperative agreement into a federal agency. *See id.* at 533. The court acknowledged that the entity was approved by Congress pursuant to an interstate compact contemplated by the Constitution and "act[ed] in parallel with the federal government in managing the stock of summer flounder," however, held that entity was simply a contract between states and, therefore, not an agency under the APA. *Id.* at 532.

In reaching its conclusion, the court in *Atlantic States* cited a Sixth Circuit case which also held an entity was not an agency under the APA. *See id.* (citing *Day v. Shalala*, 23 F.3d 1052, 1064 & n.12 (6th Cir. 1994)). In *Day*, the court found that a state agency designated by the federal Secretary of Health and Human Services to make disability eligibility determinations under the Social Security Act was not subject to the APA. *See* 23 F.3d at 1064. The court rejected arguments as unsupported by the evidence that the state agency was the Secretary's contractual agent and that the state and federal agency shared joint responsibility for the initial disability decisions of the state agency. *See id.* Even if presented with such evidence, the court reasoned that there was no legal authority which

10

subjected the state agency to the APA because it was not a federal agency. *See id.*

Here, NYCSGA's connection to a federal agency is even more attenuated than that found in *Atlantic Fisheries* or *Day*. First, NYCSGA is a QSSB, (Dkt. No. 7, Attach. 2 ¶ 4), which is defined by the Soybean Act as a "*State* soybean promotion entity that is authorized by *State* law." 7 U.S.C. § 6302(14) (emphasis added). Accordingly, unlike the interstate compact in *Atlantic Fisheries*, the formation of NYCSGA did not require congressional approval. (Dkt. No. 7, Attachs. 4, 5.) Second, unlike the substantial involvement the state agency in *Day* had to make disability determinations impacting federal benefits, NYCSGA is merely a conduit to collect assessments on behalf of the USB. *See* 7 U.S.C. § 6304(1)(A)-(B). Finally, NYCSGA does not have federal employees, and the United States Department of Agriculture and the USB have no involvement in decisions regarding personnel, operations, or NYCSGA's other sources of income. (Dkt. No. 7, Attach. 2 ¶¶ 10-11, 13.) The USB's oversight is limited to annual audits of NYCSGA assessments. (*Id.* ¶ 11.) Consequently, NYCSGA lacks sufficient federal characteristics to be designated an agency under the APA.

11

The same result is true under the Mandamus Act, which Robbins and Czub invoke as an additional basis for jurisdiction. *See* 28 U.S.C. § 1361; (Compl. ¶ 4.). Under the Act, district courts have "original jurisdiction of any action in the nature of mandamus to compel an officer or employee *of the United States* or any agency thereof to perform a duty owed to the plaintiff." *Id.* (emphasis added). In other words, "federal courts may compel only *federal* officers [or agencies] to act." *Minima v. N.Y.C. Emps.' Ret. Sys.*, No. 11-CV-2191, 2012 WL 4049822, at *4 (E.D.N.Y. Aug. 17, 2012). Federal control must be present for an entity to be an agency subject to the court's mandamus power. *See Liem Duc Nguyen v. U.S. Catholic Conference*, 548 F. Supp. 1333, 1339 (W.D. Penn. 1982); *see also Griffith v. Bell-Whitley Cmty. Action Agency*, 614 F.2d 1102, 1105-06 (6th Cir. 1980); *Cf. Carman v. Richardson*, 357 F. Supp. 1148, 1157 (D. Vt. 1973) (finding that section 1361 clearly does not apply to a private entity). For the reasons articulated above, the court also finds that NYCSGA is not an agency under the Mandamus Act.

If an entity is not an agency for the purposes of the APA or the Mandamus Act, courts have dismissed for want of jurisdiction. *See Sloan v. Truong*, 573 F. Supp. 2d 823, 828 (S.D.N.Y. 2008) ("[T]he district court

12

lacks jurisdiction when the requirements for mandamus are not met.");
*Corus Grp. PLC v. Int'l Trade Comm'n*, 352 F.3d 1351, 1359 (Fed. Cir. 2003) (characterizing whether an entity is an agency under the APA as a jurisdictional issue); *Farkas v. Ellis*, 780 F. Supp. 1013, 1015-16 (S.D.N.Y. 1992), *aff'd* 979 F.2d 845 (2d Cir. 1992) (same). Accordingly, the court grants NYCSGA's 12(b)(1) motion on this ground.

**B.    Rule 12(b)(1): Soybean Act**

Robbins and Czub allege that NYCSGA violated the Soybean Act by failing to comply with its own charter, namely by disregarding procedures to elect its directors, exceeding term limits for directors, and insufficiently notifying directors of board meetings. (Compl. ¶¶ 36-43; Dkt. No. 9, Attach. 1 at 12-13.) NYCSGA argues that this purported misconduct is not an actionable violation under the Soybean Act. (Dkt. No. 7, Attach. 1 at 7-8.)

Under the Soybean Act, the district court has "jurisdiction to enforce, and to prevent and restrain any person from violating, any order or regulation made or issued" pursuant to the Act. 7 U.S.C. § 6307(a). Robbins and Czub do not identify any statutory section, regulation, or order mandating that a QSSB, such as NYCSGA, follow its own charter and

13

bylaws.  Because there is no legal basis for relief on plaintiffs' alleged grounds, the claim fails to surmount the low bar of frivolity and is dismissed for want of jurisdiction.  *See Gallego*, 814 F.3d at 126-27.

**C.      Rule 12(b)(6) FOIA**

NYCSGA asserts that it is not subject to FOIA's disclosure requirements because it is not an agency under the statute.  (Dkt. No. 7, Attach. 1 at 3-6.)  In particular, NYCSGA argues that, as a private entity, it cannot be transformed into a federal agency because the federal government does not have substantial control over its operations.  (*Id.* at 5-6.)  In their complaint, Robbins and Czub allege that NYCSGA is subject to FOIA because it receives federal assessment money.  (Compl. ¶ 33.)  In addition, plaintiffs assert that NYCSGA's statutory power to collect assessments deems it an agency subject to FOIA.  (Dkt. No. 9, Attach. 1 at 15-16.)

As discussed above, the determination of whether an agency is subject to FOIA is a merits based decision and should be evaluated under a Rule 12(b)(6) rather than a Rule 12(b)(1) standard.  *See Main St. Legal Servs., Inc.*, 811 F.3d at 566-67.  A district court has the power to enjoin an agency from withholding records subject to FOIA disclosure.  *See* 5 U.S.C.

14

§ 552(a)(4)(B). In order for the court to order disclosure, an entity and the requested records must be covered by the statute. *See Forsham v. Harris*, 445 U.S. 169, 177-78 (1980). Under FOIA, an agency shares the same statutory definition as the APA and, as relevant here, includes "[g]overnment controlled corporation[s]." 5 U.S.C. §§ 551(1), 552(f)(1).

Courts have found that to be subject to FOIA a private entity must present a "threshold showing of substantial federal supervision of private activities." *Forsham*, 445 U.S. at 180 n.11. In the case of federal grant recipients, agency oversight of a grantee's compliance is insufficient. *See id.* Rather, "to convert the acts of the recipient from private acts to governmental acts [requires] extensive, detailed, and virtually day-to-day supervision" by the federal government. *Id.* at 180. Courts have applied this same threshold showing to congressionally created commissions, nonprofit charitable organizations, and local municipalities. *See Irwin Mem'l Blood Bank of San Francisco Med. Soc'y v. Am. Nat'l Red Cross*, 640 F.2d 1051, 1055 (9th Cir. 1981); *Sklarski v. Niagara Falls Bridge Comm'n*, No. 09-cv-633, 2016 WL 6893590, at *2-3 (W.D.N.Y. Nov. 23, 2016); *Singleton Sheet Metal Works, Inc. v. City of Pueblo*, 727 F. Supp. 579, 581-82 (D. Colo. 1989). For example, the court in *Irwin* found that the

American Red Cross was not subject to FOIA although it was federally audited, used federal buildings, and had presidential appointments on its board. *See* 640 F.2d at 1056-57.

Plaintiffs assert that the federal control test from *Forsham* is inapplicable because it only applies to grant recipients. (Dkt. No. 9, Attach. 1 at 16.) Rather, they contend that FOIA disclosure requirements should apply to NYCSGA because it has statutory power under the Soybean Act. *Forsham*, however, has been applied in cases beyond federal grant recipients, *see Sklarski*, 2016 WL 6893590, at *2-3 (collecting cases), and the court rejects plaintiffs' narrow interpretation.

Here, NYCSGA lacks sufficient federal supervision and control to be subject to FOIA disclosure. Robbins and Czub's sole allegation of federal involvement is that NYCSGA receives funding from the assessment program. (Compl. ¶ 33.) As noted above, federal funding alone is insufficient to attach federal agency status. *See, e.g.*, *Forsham*, 445 U.S. at 180. Plaintiffs suggest that the USB played a role in addressing the purported conflict of interest between Robbins, his daughter, and their capacities at NYCSGA. (Compl. ¶¶ 20-21.) However, plaintiffs made no allegation that USB directed any personnel decision regarding the

16

termination of Robbins' daughter as executive director; they only noted that USB advised against such conflicts.  (*Id.*)  In any event, similar to the cases discussed above, the level of involvement by USB or the Department of Agriculture does not confer federal agency status on NYCSGA.  *See, e.g.*, *Irwin*, 640 F.2d at 1056-57.  Accordingly, NYCSGA's motion is granted on this ground, and plaintiffs' FOIA claim is dismissed.

## V. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that NYCSGA's motion to dismiss (Dkt. No. 7) is **GRANTED**; and it is further

**ORDERED** that Robbins and Czub's complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk shall close the case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 21, 2017
Albany, New York

Gary L. Sharpe
U.S. District Judge